Thank you and good morning. Chris Brancard for the Plaintiff Appellant and may it please the Court. I'd like to start today by focusing on the text of the regulation at issue here. And I do that because, but for the application of that regulation to the group homes that are here, we wouldn't be plaintiffs. I also would like to focus on it because it codifies, it certainly lists the discriminatory housing practices committed by the city. And it is the application of those discriminatory housing practices to the group homes here, so the living homes that injured them. And finally, it goes to I think a core issue that the Court is being asked to address and that is reviewing these regulations show that the regulations apply to these group homes if and only if the city regarded them as housing, providing quote, supportive living environments for persons considered handicapped under state and federal law. The regulations are the codification of five ordinances passed between 2014 and 2017. Those ordinances resulted in the adoption of new zoning definitions, but also two new zoning chapters, 15 dealing with R1 or single family districts and chapter 16 dealing with the multifamily. Along with the multifamily regulations, because it's a CUP and the city did not want it to be able to run with the land, they moved over to the requirements that there has to be an operator's permit that's not transferable in order to operate a group home pursuant to a CUP. And that's codified under Title IX, Chapter 2, Article 23. What emerges from a review of this to help us answer the questions today, I think are seven salient points. First, these regulations prohibit group homes or sober living homes in any residential district unless they are permitted. And you will find that at statutory 13-323. Second, these regulations apply retroactively to existing group homes, such as the plaintiffs here. In fact, they are the only residential use that are denied non-conforming status. That retroactivity provision is codified at 13-312 and 13-324 of the Coastal Mason Municipal Code. You'll find it at the statutory appendix in either case at pages 77 and 79. Third, they impose unique and burdensome permit application requirements that apply to no, not just residential, but no other zoning use in the city of Coastal Mason. Now, you'll find that codified at 13-311 and 9-374. And what these application requirements do is they require that there be a complete disclosure of all ownership, all the owners, partners, anyone who has an interest in a corporation must sign, in addition to a full disclosure of any permit or license that a group home may have had anywhere in the United States at any time. No other use is required to do that. There are other things that are required, but what is not required in the regarding individual residents to establish their disability. There is an affirmation, I affirm that this is a use, and that it will be operated as disabled housing, yes. But there is no individual assessment or individual demand for medical records or things of that kind. Well, the reason for all that is, is in these provisions, and this is the fourth salient point, these regulations impose restrictions, limitations, and requirements on operation of group homes and sober living homes. Now, they range from unique parking restrictions, vehicle restrictions, the necessity, no matter how small the house is, that it have an on-site 24-7 manager. It could be as few as two or three people. And also limiting and controlling how they evict tenants. Interestingly enough, they are required to evict tenants if they don't participate in an approved self-help program. But if they do evict a tenant, they are subject to restrictions that no other residential use is in the city. And you'll find that under 13-311B, you'll find most of that. One other thing too, they restrict who can hold a permit and who can work there. You're not allowed to work under 13-311B, if you happen to be sober for less than a year, or if you happen to have been terminated from a job for sexual harassment, or if you're on parole probation. And this is owners, operators, or anyone who is working at a place. The fifth thing is, which is unique, they not only discriminate on the basis of disability, that is, but they also discriminate on the type of disability. What I mean by that is this. If you go to statutory appendix 76 under 13-311, you'll find it also in 9-374, there's a separate additional set of requirements and restrictions that apply to houses that are classified as sober living homes. They include this participation in self-help and eviction if people don't participate. There is a sixth unique provision, and that is they have to be separated by 650 feet as the crow flies from any other sober living home, group home, or anyone for treatment. Isn't that the main restriction that you're challenging here? It is certainly the main restriction that was the basis upon which these permits were denied. That is correct. In fact, if you look at, and we, to address both the objections, but also to provide, establish that the issue that we're here to discuss was never animated the decision below is whether or not they were disabled people in this housing. We went ahead and submitted requests for judicial notice. You'll find them in the raw case at its docket entry 71, and in the SoCal case, docket entry 55. This judicial notice is nothing more than the actual adopted resolutions by the city council speaking as to what they were doing, and also the planning commission. What comes out of that is three things. Three things. One, at no point did the city ever contest or indicate that these were not individuals who were disabled. They always declared, treated, even identified them as sober living homes as defined in the code. The second thing that comes out of it is no one was ever denied because their application was incomplete. Where's the medical record? Where's the individual? No one was ever denied for that. The third thing that comes out of it is that no one was ever denied because there was a finding you're not housing disabled people. And the fourth thing is the point that you raised, your honor, which is why are they all denied? Ironically, ironically, they're denied not because they're providing housing to disabled individuals. They're denied because, well, because if they're granted, it would cause an over concentration of too much housing for disabled people. And that is why the 650 is applied. Wouldn't we so without exception? I'm interested in the question of what kind of showing you need to make to survive summary judgment in this case. And I'm wondering who is the burden of proof on to submit evidence that nobody in these homes is actually using drugs or alcohol? I think it's the Costa Mesa makes a lot about that element of the definition of disabled in their brief. Yes. Let me go to the last question first. The law is clear both in this circuit's Edmonds case as well as the regulations that were promulgated under the ADA by the Attorney General that when it comes to current use, the standard is one, not currently using and two, that you are involved in a participating in a recovery program. This notion that there's a three-month gap undermines the policy associated with sober living, which is detox, rehab, sober living, and then independent living to impose a gap of nothing, essentially. May I ask one question on what you just said? Sure. Is there actual treatment in the sober living home? I thought they had the rehabilitative treatment before they arrived. Absolutely, Your Honor. And that is the continuum of care, detox, rehab, and then sober living to solidify ones and avoid relapse through the process of living in a supportive, sobering environment. There is no treatment in these homes. They are not licensed, but they do are intentional communities. They are regulated with rules, no use, and all that material, of course, is submitted to the city. The second thing I would say to go to your question is what is the standard? The standard is as it's always been under the Fair Housing Act, FEHA and the ADA, and that is was a discriminatory housing practice committed and is the plaintiff injured by that? There has never been, on the text of the statute nor in the cases, a requirement that a plaintiff show that they are associated with a disabled person or someone of color if it's a race case. Rather, was there a discriminatory housing practice committed? Here, yes. It's written all over the statements by the city and the regulations. And two, were the plaintiffs injured? Now, that's embedded in the Fair Housing Act, 42, 36, 13 says a grieved person has a remedy. A grieved person under 3602 of the Fair Housing Act, anyone who's injured by a discriminatory housing practice, injured. Council, let's say we were to agree with you that the district court's reading of the statutes was error. Your friends have argued that the evidence that you offered was inadmissible, and the district court, as I understand it, never reached that question because of its statutory interpretation. But you argue in your brief that we should rule as a matter of law that there are disputed issues of fact. Explain to me why, where the district court, as I understand it, never ruled on the admissibility of the evidence. If we agree to you, if we agree with you that the district court got the statutes wrong, why we simply shouldn't send it back for the district court to evaluate the evidence and its admissibility at summary judgment under a correct standard? I would say this, Your Honor. Because of the nature, the way the order is written by the district court, we're not exactly sure, nor are we told, because the order is written as it's written, as to what exactly is deemed to be considered for generating an issue of fact or not. For example, there is obviously a dispute on the papers here as to whether or not there needs to be an authenticating declaration, or whether or not you have to object to say that there is no way that you could ever present this evidence, the content, the substance of it. And certainly, it is the case here that all of this evidence that was presented by the plaintiff could be presented, because all of it is based overwhelmingly on, one, the city's own public records. That's why we judicially notice some. And two, deposition testimony, all the deposition transcripts, quite unlike the Orr case, which has been since eclipsed. And two, the deposition transcripts are all authenticated by the court reporter. It's all there in the record. Now, on the remand, I think two things happen. One is clarification of the law. If we look at the standard that's set forth in the HUD regulation, 24 CFR 201-D3, what essentially it says is, regardless of whether or not you have an impairment, are you treated as if you do? And clearly here, whether it be the citations that were issued, and they're in the record that's saying, you are being cited because, not because you are a group home with disabled people, but you're being cited because you have a group home without permits. Or in the lawsuits that are filed by the city to abate these group homes, these lawsuits are not suing them because you're a group home without a permit. I only have a few minutes left. Can I ask you one quick question, following up on summary judgment and evidence here? You appear to argue that the district court granted summary judgment to the city of Costa Mesa in part because you did not provide the right kind of evidence under the Toyota motor manufacturing case. Is the district court precluded from requiring individualized proof of disability status? Yes. Certainly under FEHA, under the Fair Housing Act, and under the ADA, they are. Because the standard is, were you injured by a discriminatory housing practice, not whether you're associated. Now I will say, in the minute I'm going to try to reserve for rebuttal, and I would like to reserve some time, that obviously in most cases, when a discriminatory housing practice is applied to a plaintiff, it's because they have the protected characteristic. But it is not a So, on remand, the individualized assessment of employment cases, individual as opposed to a use, over time, looking at reasonable accommodation to accommodate an employee. Your Honor, may I reserve a bit of time? Would that be permissible, Your Honor? I'm sorry? May I reserve whatever I have remaining? Well, why don't you answer Judge Katzmann's question, and I'll give you a couple minutes at the end. Thank you. Thank you very much. So, no. Now, having said that, Your Honor, there are many pathways to establishing whether or not a discriminatory housing practice was committed because of disability. Here, it's on the face of the statute itself, as well as the documents that are issued by the city over and over again. Because you're a sober living home, we've got too many of you, and therefore, you're going to be excluded. There are cases in which, if you're dealing with an individual, at a point in time, who's asking for an accommodation, of course there has to be that showing. Because it is the accommodation that you're trying, the disability or the effect of it, that you're trying to accommodate. But here, when we're dealing with zoning, it's uses, not users. We're actually looking at a use over time. And that's why the city itself never even raised this issue below, at all, until they wanted to challenge it as disability discrimination. Is individualized assessment an appropriate measure? Of course it is, in certain cases. But the important mistake, I think, that was made here was that there are many, many pathways to relevant evidence if the proper standard is applied. And that was not done here. And what is the status of the abatement action? The abatement actions have been resolved. In what way? They were resolved, and I did not represent the individuals in the abatement action. I know there was a settlement between the individuals, the individuals who are here, the group home operators in the city, and they did close the homes. They were mandated to close those homes. In fact, they were mandated to, in one case, dealing with RAW and the Knox property, to actually evict residents out during the middle of COVID in order to avoid a contempt motion by the city. All right. Thank you, counsel, and I will give you some time at the end. Thank you very much, Your Honor. I appreciate it. Thank you, Your Honor. Thank you. Mr. Levine? Good morning, Your Honors. May it please the Court, Brant Levine for the United States is amicus. Your Honors, this Court should vacate the Orders on Appeal because the District Court imposed an overly burdensome standard for when group homes can pursue claims under the Americans with Disabilities Act and the Fair Housing Act. I'd like to begin by discussing the regarded as prong because that's where the District Court's error is most apparent, and that's where the evidentiary issues fall away. And here, the logic is very simple. Under Costa Mesa's own zoning code, one, residents must have a qualifying disability under federal law to be in a group home, and two, Costa Mesa admits that plaintiffs operate group homes. Therefore, plaintiffs operate group homes for individuals with qualifying disabilities under federal law. It really is that simple here. The District Court, though, didn't consider this evidence. And the reason the District Court didn't consider this evidence is because it accepted Costa Mesa's standard that a group home has to show an association with a particular individual with a qualifying disability. But that requirement is not in the text of the statutes. The legislative history does not suggest it, nor does this Court's precedent mandate that. In fact, we're not aware of any other court to impose such a restrictive standard on group homes. Do you think that there are home-run cases for you on this question? Especially when you look at the City's ordinance here, yes, there's no dispute because whatever the standard is for federal law here, it's baked into the ordinance. You cannot be a group home unless you have an individual here. Now, we've read your brief, your brief, your amicus. What is, in your view, what is the best case for this proposition? The best case, I think the recap case out of the Second Circuit is a very good case because it looks at admissions criteria, and that's something that we have offered in this case. And I would also refer the Court to the Sixth Circuit's decision in the MX group home case that also looked at admissions criteria and comments from residents to show that city officials may have been motivated by derogatory comments. Now, is this an issue of first, I'm a visitor here, is this an issue of first impression to the Ninth Circuit? The Ninth Circuit hasn't specifically addressed this issue on the types of evidence that group homes are required to put forth. The closest this Court has come is in the Pacific Shores case, and the Pacific Shores case also involves sober living homes who are challenging a license. And in that case, the city defended the claims a little bit similar. They said the sober living homes in Pacific Shores weren't affected by this. And this Court easily shot that down. And this Court noted that, one... Is this Judge Reinhart's opinion you're referring to? Yes, Your Honor. Okay. And as Judge Reinhart said in that opinion, one, the sober living homes there had to expend considerable time, effort, and resources to apply for permits and to comply with the zoning code. And two, the zoning code required other group homes to shut down. And the Ninth Circuit said that was more than enough for those group homes to proceed with their claims. And that's what we're arguing here. And in fact, Judge Wardlaw, you had asked the question about what type of standard is needed here. We're not asking this Court to establish a specific standard for how much is enough to defeat summary judgment. What we're asking this Court to do is simply allow group homes to present any relevant evidence, whether it's individualized or not, to get to the merits of the case. And that's really what all those other courts do, too, that we've cited all those cases, is they allow group homes to provide lots of different evidence. Now, sometimes that evidence is enough to show a disability. Sometimes it's not. And that is a question that a district court should evaluate all the facts on, especially on the summary judgment standard. Here, there's so much evidence that the district court did not consider that a lot of the other courts  It's really not clear... No, it's okay. I'm sorry, Judge Bennett. Let me just get this out in direct response, and then you can... It's not really clear what Judge Selma admitted, deemed admissible or not in this case, right? It isn't clear. There's not a lot of detail on that. And I would say... Let Judge Bennett answer this question now. So, counsel, I have an unrelated question. In 2008, there were amendments to the ADA, and I don't believe there have been similar amendments to the FHA. Does the United States have a position as to whether, because of those 2008 amendments to the ADA, there are, as relates to this case, material differences in the way we should interpret the ADA and the FHA, including as to significant impairments, et cetera? Or is the United States' position that the two statutes should be interpreted the same way, if the United States currently has a position on that? Our position is, at least in this case, the two statutes should be interpreted the same way. This case doesn't get to the issues that Toyota Motor was talking about, that Congress specifically rejected when it passed the ADA Amendments Act. I mean, sure, as a general matter, Congress said when it passed the ADA Amendments Act that the Supreme Court standard in Toyota Motor was too demanding, that it should not be a demanding standard to show a disability. But the question really in this court is not the standard to show a disability, but what types of evidence can be presented by group homes? It's a much narrower question. And on that question, there is no daylight between the ADA and the FHA. No matter how you proceed, the answer should be the same. The Costa Mesa seems to be arguing that there's no evidence that the actual group home residents are not using alcohol or drugs at the time, and that therefore they're not disabled. And that's why I ask that question. Who has to show that, and is that really a showing that needs to be made? Usually the way the statute works is you lose your protection under the ADA or the FHA if you are currently using illegal drugs. Now in this case, it's hard to understand that defense from Costa Mesa because the parties here have shown that to live in these group homes under the group home zone criteria, you cannot be using illegal drugs. Under Costa Mesa's statute, it prohibits using illegal drugs. So at a minimum, this should have created a dispute of material fact for trial. But again, the district court didn't consider this because the district court is focused on individualized residents. And the issue is not about whether John Smith or Jane Doe is currently using illegal drugs right now. The issue is just looking as a general matter, collectively, is somebody in that group home going to be using illegal drugs? And under the standards and the evidence that the sober living homes have put forth, the answer is no. Under Costa Mesa's regulations, the answer is no. And that at a minimum should create a genuine dispute of material fact. And to follow up on your other question, Judge Wardlaw, about admissibility, the district court's decision admittedly is thin on this. But I would say the issue here isn't about admissible evidence, it's about relevant evidence. And here, the district court viewed the record through the wrong legal lens. In the district court's view, the only relevant evidence is that which pertained to individuals. And while that certainly is relevant, it's not the end of the world. It's a lot of other evidence. And because the district court did not consider that other evidence, we do think the best outcome for this case is for this court to remand the district court with instructions to consider all the relevant evidence. At that point, Costa Mesa can raise whatever evidentiary challenges that it wishes. The other point that I'd like to make up here is also about the impact of this decision. Today, certainly, we're talking about group homes for persons with substance abuse disorders. Tomorrow, we could be talking about group homes with persons with intellectual disabilities. Costa Mesa's proposed standard here for requiring individualized evidence presents too high a hurdle for group homes to overcome. As we mentioned in our briefs, if a group home has not even opened yet, they would never be able to satisfy the standard of showing an association with an individual. And even when group homes are open, if there is a blatantly discriminatory zoning ordinance designed to run a group home out of town, that group home would be powerless to challenge that zoning ordinance if its residents were unable or unwilling to testify. The purpose of the FHA and the ADA is focused on ending discriminatory actions. And that's really where the focus should be on this case, on the merits. Did Costa Mesa discriminate against these group homes? But we're not even there yet. We're just under this threshold question, can the group homes bring this suit? Can they proceed to the merits? And the answer to that question should be yes. And this court should clear out those obstacles and allow this case to be litigated on the merits. I see my time is running low. I'm happy to answer other questions. I'm just playing this out. Is it your position that by definition this is discrimination against the group homes, the disabled? No, that is not our position. We are not taking a position on the merits. Costa Mesa does have defenses to this case. While we're certainly concerned about a zoning ordinance that singles out certain groups with disabilities, we recognize that there are defenses here and this should be litigated on the merits. So they could argue they were not discriminating against disabled persons because they were at a legitimate non-discriminatory motive of safety and health in the city? Correct. If there are no other questions, I will yield the remainder of my time. Thank you. Thank you very much, Counsel. We appreciate your being here to represent the United States. Thank you, Your Honor. I guess we should hear from Ms. Zangelia. There she is. Make sure I'm unmuted. Okay, good. Thank you, Your Honors. Mary Christine Zangelia of the Belcalter Firm on behalf of the APALI, the City of Costa Mesa. The approach urged by Plaintiffs and the United States really advocates for a standard of proof of disability that's in a reported case and which would really write out the no current use and no real ongoing problem of drug use requirement that is imposed by the terms of the federal statute, which is unique to this specific kind of disability. And by allowing more homes to bring claims that can survive summary judgment, even in the absence of evidence of disability, would regulate or monitor otherwise unlicensed sober-living homes for the benefit of those in recovery using permitting standards that track sober-living home industry standards and echo state licensing requirements for similar types of homes. Counsel, both the United States and your friends have argued that under this standard that you are proposing, if a discriminatory zoning law prevents a group home from opening in the first place, i.e. someplace with no current residents to put before the court, the group home could never satisfy the disability element of an FHA or ADA claim. I'd be interested in your specific response to that as to the standard you're proposing, i.e. there has to be proof of the disability of each current resident. Well, the standard, whether you're looking at a majority of people in the home or particular individuals, there's still a standard with regard to current usage because those who  But the United States is talking about and the appellants to the situation where you put in an application to open a group home. You obviously don't know exactly who your residents are going to be. And it's denied under these ordinances for the reasons that they claim are discriminatory. Under your standard, they would just automatically lose because they can't proffer that every or any particular resident would necessarily be disabled with proof as to these hypothetical residents. So what's your response to that? Yeah, my response to that is that this is an individualized inquiry in each case. And so in the case where somebody had not opened a home but was looking to do that, there are cases that talk about that. I think RECAP involved that as well. You would look at policies. You would look at certain procedures. In that case of saying we are zero tolerance. And in previous homes that we've had, we actually execute on zero tolerance. And there's very little relapsing or very little problems. I mean, there are many different ways to produce evidence that whether you have declarations of individual people who have resided. So why isn't that type of evidence sufficient here to create a disputed issue of fact? Why would that evidence be sufficient for a proposed home but not sufficient for an extant home? But none of that evidence was presented here. I'll say there have been eight challenges, eight separate cases challenging these ordinances. These are only two of them. Thus far, the city has prevailed in every one of them, including after jury trials, that these were not discriminatory ordinances. And in one of those cases that recently went to trial, the plaintiff did present evidence that overcame a summary judgment motion showing, having declarations of residence indicating that they both had substantial limitations and no current usage, that there were policies, medical records. Just a lot more of this kind of evidence that cases have indicated are what is required, which is the plaintiff's burden. That was Judge Wardlaw's question, too, in terms of who has the burden with regard to this no current usage or what I call the no real ongoing problem standard. And that is part of the element of the claim of disability. If you have current usage and a real ongoing problem, you're not disabled. But the district court here, as I understood it, said that basically none of that evidence works because the plaintiffs need to present evidence that every single resident is drug free. Oh, I do not think that is the standard that the district court applied. And I think that's a misapprehension. Perhaps the other side is urging that. But that's not the case. We're saying just give us some evidence of some of this with regard to no current usage. And in these cases, we're talking about people who are coming into the homes who have 30 to 90 days of treatment prior to coming there. And that, according to the National Institute of Health, you need 90 days as the gold standard of drug treatment to reach a level of sobriety that's helpful and useful. So you have people who haven't even had full treatment up to 90 days coming into the house. And while there is drug testing in these homes, the evidence of people who own these homes said, indicated that, yeah, we would put them out to detox if they tested positive and bring them back three days later to come back into the home. So if there's evidence with regard to usage at all, it's in favor of a very high likelihood of a real ongoing problem of residents of these locations. And given all of that taken together, that we would urge that there's not a tribal issue in this particular case, is there potentially, Judge Bennett, a case where somebody could create that tribal issue? Yes, I indicated one, the Ohio House case that went to trial. There are other indications of proof with policies and things like that as well. And indicating that you're actually following through on your policies, that might be possible. Or as in recap, where there was a New York licensing law at the time that actually required certain, that these homes couldn't bring people into the home unless they had all of these criteria, including no current usage. Counsel, my understanding of the record here is that they did introduce evidence of their policy that you would be evicted if you engaged in drug or alcohol abuse in the home. Isn't that correct? They averred that they had policies in their application. And then in the testimony, the deposition testimony that was presented with the motion, they indicated that in fact they would bring people back if they had lapsed. So I'm not really sure that's actually a zero tolerance policy. How do you, what is your response to the argument presented by the government, you just heard it in part, that reversal is required here if the purposes of the FHA and the ADA, the anti-discrimination purposes are to be respected? What is your response to that, to the argument which is also based on the statute and also the statute in the context of policy, non-discrimination policy? Yeah, so the point that we're, that is a common flaw across both the regarded as and the actual disability aspects of the claims here is the no real ongoing problem situation. And that really is distinguishing from any other type of aspect that could be discriminated against in the federal laws. So addicts wax and wane into disability and out of disability. Physical disability doesn't usually happen that way, nor does any other kind of fixed aspect to an individual. But under the federal statute's terms itself, this is, I think one commentator said, it's kind of a second class disability because it does come and go. And as a result of that, it's very important to establish this threshold element that you are not only in recovery, that's not enough, that you are, there's no real ongoing problem with drugs or no current usage. That's just part and parcel in the statute in the beginning. And that is very different from any other kind of disability or focus of the discrimination statute. So I think that whatever is said here, in other words, is very unique to addiction. And just as the government is concerned that these cases can't get to actual, to adjudication beyond the threshold summary judgment standing, we're very concerned that there will be many more cases brought by people who do not, cannot meet the threshold tribal issue with regard to disability, but nonetheless will be taking this abuse trial over and over. Part of your argument, as I understand it, is that the plaintiffs have to prove that the city subjectively regarded the residents as impaired. Is that right? Well, that has to do with regard to the regarded as problem. Yes, yes. Right, right. But there was some kind of specific thing to that. And the fact that the ordinances at issue here defined, for example, group homes and sober living homes as a facility that is being used as a supportive living environment for persons who are considered handicapped under state or federal law doesn't suffice to demonstrate that the city regarded these homes by its ordinances as housing people who are impaired, that there has to be evidence that some person at the city thought that specific residents were specifically impaired? No, it's with regard to even these specific homes being regarded in a particular way. That's a general broad-based ordinance, which these homes invoked by applying for the application themselves and averring that they were one of those homes. So the city said, kind of like when the court decides something and says, we're going to accept without deciding that this is true, we're going to move on to these other factors and adjudicate that. That's what happened here. So what kind of exact evidence would the city say, if this were the standard we adopted, the city's subjective intent standard, what kind of exact evidence would they need? Would they need to depose the mayor or the city manager or somebody to say, did you consider anybody in House A to be impaired? Well, first of all, it would be any particular regard for the particular location in itself. We're not even there. When you're talking about the ordinance generally, that's something that's generally applicable. So it's not even like that ordinance somehow specifically says that SoCal, at a particular location, is a sober living home. As the appellant indicated in his argument, he was very clear, and I agree, there was no evidence and no determination by the city with regard to disability or that threshold question at the permitting stage or in the ordinance itself. So it's just not there. And even appellant agrees that it's not there. So there's no particular decision by the city with regard to that. So if there were some kind of decision, if evidence had been presented on that point, even if the group home had volunteered it and said, well, we weren't required to, but we could have presented it, then there would have been something to support some kind of particular finding with regard to that home and that location. So I don't think it's a super really high standard, but it just isn't here. And moreover, there's particularly no evidence with regard to the city regarding these locations as not only having residents who are disabled, but within that, by saying they're disabled, you have to be saying they have some kind of perspective with regard to no current use and no real ongoing problem of drug use at the house. And again, that's a common flaw across the regarded as and the actual disability. There just isn't any evidence of it, and the evidence that is there supports the fact that there's very likely current usage going on. Can I just ask you a quick question, Council? That phrase, very likely usage going on, doesn't that suggest an issue of fact? Well, let's see. There have been some assembly judgments granted where people who come into the home have three months or less of treatment. Here we have 30 days to three months. And then the evidence we have is that the policies are not actually implemented or that people are brought back into the house. So that's what we have here. I mean, I think I was being pretty, maybe overly kind to the plaintiff in saying that it was very likely, because that's the evidence. We don't have any other evidence. And in fact, they refuse to produce any evidence with regard to any of their residents or even some kind of declaration of even one resident about what was happening in the house. Great, Council. Council, you're over your time. So I'll let you sum up. Okay, I just want to make sure there weren't any more questions. Are there any more questions? Rich Bennett? No, thank you. Okay, great. Thank you so much. Yeah, so we would urge that the summary judgment be affirmed. There is certain, particularly on the current usage of ground, which was an alternate ground that the court relied on. He didn't just focus on substantial limitation, but also impairment in his summary judgment ruling. Thank you so much. Thank you, Council. Mr. Brancart, I'll give you a couple minutes. I appreciate that. Can I clarify something? Is this both a facial and an as-applied challenge? It is, Your Honor. And as a facial challenge, the defense would not be a reasonable, non-discriminatory, legitimate purpose, but rather it'd be governed by this Court's case, the community house case versus City of Boise. And in a facially discriminatory challenge, as this clearly is, based upon the face and the explicit text of the ordinance, the standard is does the regulation benefit disabled individuals, and specifically does it enlarge their housing opportunities? Obviously, we believe it does not, based upon the closure of the homes. But let me go to this subjective intent. I know we focused on actual disability, but there are many ways to get to this, and I want to focus on the regarded as. Here, there is no daylight between what the city did and what they claimed these individuals to be and regarding them as sober living homes. In order for these regulations to apply, in order for them to cite them, sue them, fine them, and regulate them, the city had to determine and declare, and they did, that we regard you as a sober living home, which means, by definition, in operation of the statute, they are necessarily housing people that are considered disabled. And if you go into the statutory appendix, pages 49 and 50, you will see the definitions, and they are very explicitly tied to we are determining when we say you are a sober living home that you are housing or intend to house, or it's for the purpose of housing, people that qualify as disabled under the law. There is no better or clearer statement of subjective intent of a municipal entity than the resolutions, and the resolutions we provided to you are clear, that at no point was there any consideration by the city that these people were not disabled. And in fact, think about what the city is asking of us. We, if you go to section 1313, you'll see the application requirements. We provided them our relapse policy. We provided them our drug testing policy. We provided them our admissions policy. We provided them that we make sure that individuals are going to meetings as well as not using drugs. We provided them everything. What the city is proposing is what were we to do. And the whole time, by the way, the city is saying, we accept that you're a sober living home. Were we supposed to bundle up stuff and drop it off to them, medical individual records? Nor does that make any sense because it's not about an individual who may be aberrant and asked to leave, but it's about the continuation of a zoning use. Over time and its intended use. I think the MX case that the government referred to and said it in the briefs is informative. Are there any, in your view, are there any situations in which a city would be justified in regulating the number of sober living homes within its boundaries? Yes, and I think that there is plenary authority the city has. What's interesting is the city is concerned here and the reason it classifies them and regards them as sober living homes is because that triggers all these restrictions. That's why this was never raised until we get to saying, wait a minute, we now want to challenge it and you're not disabled. But the authority regarding, let's go to the basic ones, occupancy limitations. Throughout California, we have a statewide standard, the Uniform Housing Code. We have plenary regulations in the city of Costa Mesa that govern noise, parking, color of your home, how you maintain your property, the quality and condition of your property, as well as behavior. If, for example, someone is found to be using drugs in a group home,  and yes, consistent with the ADA regulation I said it to you and the Edmunds case from this court, after they've detoxed, they can come back, provided that the rule is no use and you're participating. And that is essential because if we're going to go ahead and provide the stability that individuals need, and it's a use over time, we cannot let it be held hostage to one aberration, right? And that's why it was so important, and the city recognized this below. Give us your policies and things of that kind. But if they were to discover that we were housing people that use drugs and they have plenary police powers to do that, as well as authority to actually designate a house a, quote, drug house, if that was occurring, of course they would lose their qualification because the one issue the city never said here was, you aren't housing disabled people until the group home said, wait a minute, you've treated us this way. We want to challenge our treatment because the treatment is clearly tied explicitly on the face of the statute to disability status. Okay, following up on Judge Wardlaw's question, if we were to agree with you on the facial challenge, what would remain of the case in terms of trial below? That's the first question. And then relatedly, just so I understand the posture, your posture, the city filed a motion for summary judgment. Was there a cross motion for summary judgment? There was not, Your Honor. And I will go to the litigation. Judge Selma did reverse his ruling on disability and did hold recently that the persons in a group home were disabled, and he actually, on a summary judgment motion, I don't think they even asked for it, said, no, these people are treated as disabled. He did it after, by judicial notice, the briefs that were submitted to this court were submitted to him. Now, on remand, if there is a determination of facial discrimination, I think it clearly does meet that standard under community house. The standard then and the defense that can be brought by the city is twofold. One, there is always the defense of direct threat. If the city can show that these individuals are a direct threat, and that's embedded in, for example, the Fair Housing Act under 3604 F9, or two, it can show that these regulations are to benefit disabled housing. If they can show that, they can meet the community house standard or the Fair Housing standard. Does that answer your question? Those would be, obviously, issues to be litigated. You just said Judge Selma has now reversed himself? Not in this case. I apologize. Not in this case, but in a case that was dealing with this issue, this very same issue. He went ahead and the briefs that were submitted to you were provided to him, and he makes a determination that in that situation, that disability is not going to be an issue in the people that live in the homes, which is consistent with the- Can you give us a judicial notice or a 28-J letter on that case? I think we can find that. I think we can find that. Thank you. The issue here is on the regarded as, which is, I think, the central piece. If we do not have a situation such as embodied in the HUD reg 201-D3 or in the ADA reg where it's about treatment, what we're left with then is a situation that a city can, as done here, declare individuals to fit within a certain category based upon protected class status and then regulate them adversely and then claim later on, and only when they go to court to seek relief, no, you're not disabled, even though it is the treatment that is clearly they were subjected to, and that's what causes the injury, and it's that injury that arose out of the discriminatory housing practice that is at the center of this case in these regulations. All right. Does anybody have any further questions? Judge Bennett? No, thank you. Thank you. All right. Thank you very much, counsel. You're well over your time, so- Okay, you were answering our questions, and we appreciate that. I appreciate the court's indulgence. Thank you, Your Honor. Thank you. No one mentioned the attorney's fees and costs. I apologize for running out of time, and the only thing I would say on that, if I may, Your Honor, is this. Let me say three things about it. First of all, none of these claims were themselves frivolous. All of them have a grounding, whether it's the 1983 or the 1985, 1986, in intentional discrimination, which was the core of this issue. Similarly, under the Section 65008 claim, a portion of that, subdivision B of that, is not governed by the 90-day statute of limitation that was referred to by the city. But putting all that aside, what Judge Selma holds is that they are litigated, not that they're frivolous, but litigated in a frivolous manner, and it is true that they were withdrawn. He is pointing on the Noor-Pennington issue, and I would say two things about that. That comes into play when it is the 3617 claim under the Fair Housing Act, the so-called interference claim, and, in fact, they do say it's retaliation. But I would say two things about that. One, that's not wholly where they rest their 3617 claim to deem it frivolous. In fact, as they point out, if you violate 3604, that is a per se violation. You're violating the Fair Housing Act, and, therefore, you're interfering with rights. That's in the briefing. But the second thing I would say about the Noor-Pennington is this, that clearly the Noor-Pennington issue and the state court abatement issues are the other side of the very same coin. And while they should have perhaps addressed it, the fact is is that it is not necessarily frivolous or to be deemed frivolous because they didn't anticipate a defense. The last thing I would say is this. The but-for standard in awarding fees, it's only 10%, but it means a lot to very small, it means a tremendous amount to very small operators, such as the group homes here. And what I would say about that is this. Although the city says we can't segregate, nowhere in their billings is there any allocation for these claims that are deemed to be litigated in a frivolous manner, but although it's only 10% and the city asks for 15% to 25% that they think is associated with the frivolous claims or claims litigated in a frivolous manner, the fact is 10% is less, but it still is not grounded in the but-for analysis because all of this evidence is associated with the pattern of practice claim of discrimination based upon the statute and the implementation of the statute as applied to these individuals. So I think that is important. I would ask that that be vacated because, one, they aren't frivolous as a matter of law. Certainly the fact that they lost isn't the deem or the test of frivolity. And the second thing, even if they were, there's no way to segregate the but-for analysis that sets forth in the Vince case. All right. I think I have to ask Ms. Sangalia if she wants a couple minutes to respond to that argument, if she's still there. Ms. Sangalia? There you are. If you're talking, we can't hear you. You must be muted. Okay. Now I'm not muted, I think. I hope. No, we can hear you now. Yes. Okay, perfect. Thank you so much. This sounds like a Verizon commercial. Okay. So, yes, with regard to the fees and costs, certainly we did note, given, as the court, the previous panel did in Yellowstone, that given the change in law, that a remand for consideration under the current standard is appropriate with regard to the costs. And we can also see, with regard to the fees, the allocation between frivolous and non-frivolous claims, we could also see where there's a possibility of a remanding for consideration on that point as well. All right. Well, thank you, counsel. So Cal Recovery and Ra Recovery versus the City of Costa Mesa will be submitted, and this court will be in adjournment for this session. Thank you very much, counsel. All rise. This court, for this session, stands adjourned.
judges: WARDLAW, BENNETT, Katzmann